**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

KATHLEEN HOLBROOK,

    **Plaintiff,**

        **v.**                     **Case No.** 22-CV-229-FAB-JAR

ANCHOR GLASS CONTAINER
CORPORATION,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, Senior District Judge[1]

Before the Court is a Report and Recommendation (R&R) issued by United States Magistrate Judge Jason A. Robertson regarding defendant Anchor Glass Container Corporation ("Anchor Glass")'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Docket No. 42.)  Having considered the magistrate judge's recommendation, plaintiff Kathleen Holbrook (Holbrook)'s objections and Anchor Glass' response to the objections (Docket No. 42; Docket No. 43; Docket No. 44), the Court **ADOPTS IN PART and REJECTS IN PART** the magistrate judge's recommendations, and **GRANTS IN PART and DENIES IN PART** Anchor Glass' motion for summary judgment.

---

[1] Of the District of Puerto Rico, sitting by designation pursuant to 28 U.S.C. § 292(d).  See Docket No. 181.

**Case No.** 22-CV-229-FAB-JAR                                                                    2

## I.    BACKGROUND

Anchor Glass is headquartered in Tampa, Florida and operates multiple production facilities throughout the United States – including a facility in Henryetta, Oklahoma ("Henryetta Plant"). On April 13, 2010, the company hired Ms. Holbrook for the position of line controller in the "cold end" of the Henryetta Plant. (Docket No. 25 at p. 9; Docket No. 37 at p. 5.)  During her new employee orientation, Ms. Holbrook reviewed workplace policies maintained by Anchor Glass, including an Equal Employment Opportunity and Affirmative Action Policy ("EEO Policy") [Doc. 25-3]; a Policy Against Harassment ("Anti-Harassment Policy") [Doc. 25-4]; and an Attendance Control Program ("Attendance Policy") (Docket No. 25-5).  (Docket No. 25 at p. 9; Docket No. 37 at p. 5.)

During the course of her employment with Anchor Glass, Ms. Holbrook held the following positions:  (1) cold end line controller; (2) "hot end" apprentice machine operator; (3) hot end journeyman machine operator; (4) hot end shop operator; and (5) hot end upkeep.  (Docket No. 37-1 at pp. 52-53.)  Glass bottles are formed in the hot end of the Henryetta Plant and are packaged in the cold end.  (Id. at p. 29.)

**Case No.** 22-CV-229-FAB-JAR                                                        3

### A.    Anchor Glass' Attendance Control Program

Anchor Glass' Attendance Policy provides as follows:

> In order to operate efficiently, Anchor must depend on a reliable work force that is consistently on the job when scheduled to work.
>
> . . . .
>
> Should you be disabled for three (3) days or more due to illness or injury, you must contact Human Resources for a release to return to work.  You are required to present a doctor's release properly dated showing the dates of disability and certifying that you are not able to resume your regular duties.
>
> Doctor's certificates are to be presented to Human Resources prior to the shift that the employee returns to work.  It is the responsibility of the employee to promptly present all doctor statements regarding changes in work status including work restrictions to Human Resources.  Failure to do so could result in absences against your attendance record in accordance with this policy.

(Docket No. 25-5 at p. 3.)  According to the Attendance Policy, "[a]n employee will be subject to immediate discharge . . . in the event the employee does not secure a doctor's release to report back to work.  Three (3) consecutive working days of unknown absence will be considered a voluntary quit." (Id., § IV(A).)  An "unknown absence" is defined as "[a]n absence for which no proper established procedure was utilized to notify the Company of such absence."  (Id. at p. 1, § I(3).)

### B.   Ms. Holbrook's Medical Leave of Absence

On February 15, 2020, Ms. Holbrook suffered a broken arm during a domestic dispute.  (Docket No. 25 at p. 10; Docket No. 37 at p. 6.)  She accordingly applied for, and Anchor Glass granted, leave of absence from February 15 to May 10, 2020 pursuant to the Family and Medical Leave Act.  (Docket No. 25 at p. 10; Docket No. 37 at p. 7.)  Anchor Glass also granted Ms. Holbrook its insurance provider's (Cigna), short-term disability benefits from February 15 to August 14, 2020 (Docket No. 37-1 at pp. 57-59 (224:14-231:10, 232:1-9), p. 62 (241:24-242:3)), and long-term disability benefits from August 26, 2020 to January 13, 2021. (Id. at p. 59 (231:11-232:9), p. 62 (242:4-7).)

Ms. Holbrook underwent two surgeries for her broken arm, on March 10 and July 7, 2020.  (Id. at p. 59 (229:2-9), pp. 60-61 (236:20-237:8).)  Lisa Humphrey, an employee in the Henryetta Plant, Human Resources (HR) Department, e-mailed Ms. Holbrook on July 14, 2020, stating that, according to Cigna's records, her leave would end that same day, and inquiring into her return-to work date.  (Id. at p. 60 (234:24-235:22).)  Ms. Holbrook stated that she had just undergone a second reconstructive surgery, would be "in another cast for six to eight weeks," and that she had spoken to her Cigna case manager who had told her that her leave

would *not* end on July 14, 2020.  (Id. at pp. 60-61 (236:13-237:12), pp. 87-88 (344:5-346:24).)

On or around October 17, 2020, in response to a text message from Danny Hoover,[2] Ms. Holbrook indicated that she was working for DoorDash, Uber, Lyft, Postmates, and Uber Eats "for extra cash to help pay bills" while on medical leave.  (Docket No. 37-1 at pp. 49-50 (192:21-193:17), pp. 81-82 (319:7-321:16); Docket No. 37-2 at p. 3.)  Mr. Hoover promptly contacted Fred Dorrell, the lead HR manager at the Henryetta Plant, and Mr. Dorrell summarized their ensuing conversation in an e-mail as follows:

> I received a call this evening with some information that Kathleen Holbrook, who has been off on medical leave for quite some time, is working for Uber, DoorDash and Lyft while drawing LTD [long-term disability].  I was forwarded the following screenshot as well.  The individual stated they had spoke [sic] with her and she has no intentions of coming back to work.  Not sure what to do with it but wanted to make you aware.

(Docket No. 37-2 at pp. 2-3.)  According to Ms. Holbrook, she never told Mr. Hoover that she had no intention of returning to Anchor Glass.  (Docket No. 37-1 at pp. 51 (199:18-25).)  She also testified that, while on medical leave, she never worked more than a combined 20 hours each week for ride-hailing or food delivery services.  (Id. at p. 50 (196:2-9).)

---

[2] A former Hot End tank manager at the Henryetta Plant.

Ms. Holbrook had a follow-up appointment with her surgeon, Dr. Marcy Clements, on January 13, 2021. (Id. at p. 63 (248:9-13).) Dr. Clements purportedly recommended that she work in the Cold End of the Henryetta Plant because her "arm wasn't strong enough" to work in the Hot End. (Id. at p. 89 (352:13-25).) Ms. Holbrook also testified that Dr. Clements advised that she take "an extra week or two" to heal before returning to work. (Id. at 86 (338:7-12).) According to Ms. Holbrook, Dr. Clements intentionally omitted the release date on her return-to-work release form ("January 13 Form") to allow her the choice between immediately returning to work or following her medical advice. (Docket No. 25-7; Docket No. 37-1 at p. 86 (338:3-17).) In addition, the January 13 Form does not state that Ms. Holbrook had achieved maximum medical improvement ("MMI") on January 13, 2021. (Docket No. 25-7.)

Two weeks later – on or around January 27, 2021 – Ms. Holbrook called Mr. Dorrell and informed him that she was ready to return to work. (Docket No. 37-1 at pp. 45-46 (176:22-177:6), p. 64 (250:15-23), pp. 84-85 (332:10-333:5), p. 86 (339:8-16).) On Mr. Dorrell's instructions, Ms. Holbrook e-mailed him a copy of her January 13 Form. (Id. at p. 85 (333:5-8).) On February 2, Mr. Dorrell informed Ms. Holbrook that the January 13 Form was "incorrect," and that she needed to obtain a completed form from

**Case No.** 22-CV-229-FAB-JAR                                                    7

Dr. Clements.   (Id. at p. 85 (333:8-334:21).)   Ms. Holbrook

e-mailed Mr. Dorrell on February 3, stating in pertinent part:

> My apologies for not being able to get the correct
> paperwork needed before my doctors' [sic] office closed
> yesterday. I am waiting for a call back from her office
> and if I don't hear anything before noon, I'll go to her
> office anyway to get the correct documentation needed.
> I apologize for any inconvenience this may have caused.
> I'll call you as soon as [I] get the documentation.  I'm
> looking forward to [] getting back to work.

(Docket No. 25-8.)   Mr. Dorrell responded that same day, asking

Ms. Holbrook to either e-mail or bring the correct paperwork to

him or Lisa Humphrey.   Id.   Ms. Holbrook received a new return-

to-work form from Dr. Clements' office on February 4 ("February 4

Form") and she forwarded it to Mr. Dorrell.   (Doc. 25-10.)   The

February 4 Form indicated that Ms. Holbrook was released to return

to work on January 13, 2021.   Id.   The following day Ms. Holbrook

received a letter from Mr. Dorrell, stating in pertinent part:

> On Thursday, February 4, 2021 I received documentation
> from your physician, dated February 4, 2021, [] that you
> were released to return to work on January 13, 2021,
> [which is] nineteen (19) days after being released to
> return to work.
>
> This letter serves as notification of your separation of
> employment from Anchor Glass Container Corporation,
> effective the date of this letter.
>
> This decision is based on your failure to provide the
> requested and necessary information to substantiate your
> leave, resulting in failure to report off.
>
> (Docket No. 25-11.)

## C.      EEOC Charge of Discrimination

Ms. Holbrook filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on April 19, 2021, complaining of a hostile work environment, sexual harassment, and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), disability discrimination in violation of the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101 *et seq.*; discrimination based on her use of her leave pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), retaliation, and wrongful termination resulting from complaints she submitted against Anchor Glass employees.  (Docket No. 25-13 at p. 3.)  The EEOC sent Ms. Holbrook a Notice of Right to Sue.  (Docket No. 2.)

## D.      Procedural Background

Ms. Holbrook filed this action against Anchor Glass on August 16, 2022, asserting claims for gender discrimination, hostile work environment, and retaliation pursuant to Title VII, interference and retaliation pursuant to FMLA, and retaliation and disability discrimination pursuant to the ADA.  (Docket No. 2.) On September 26, 2022, Anchor Glass answered.  (Docket No. 14.) Discovery ended on August 28, 2023.  (Docket No. 24.)

On August 14, 2023, Anchor Glass filed a motion for summary judgment. (Docket No. 25.) Ms. Holbrook responded on September 25, 2023, and Anchor Glass replied on October 10, 2023. (Docket No. 37; Docket No. 38.) On May 23, 2024, the motion was referred to Magistrate Judge Jason A. Robertson. (Docket No. 39.) Magistrate Judge Robertson issued a Report and Recommendation on December 23, 2024, recommending the Court grant Anchor Glass' motion for summary judgment. (Docket No. 42.)

Magistrate Judge Robertson recommended finding (1) that Ms. Holbrook voluntarily dismissed her ADA retaliation claim and all her FMLA claims (Id. at p. 1), (2) that Ms. Holbrook failed to make a *prima facie* showing for her gender-based discrimination claim pursuant to Title VII because there was no evidence that her complaints against Hawk and Hoover occurred in close proximity to her termination, and failed to show she was treated differently than similarly situated employees (Id. at pp. 12-13), (3) that even if Ms. Holbrook had a made a *prima facie* showing, Anchor Glass had a legitimate and non-discriminatory reason for terminating her, and that Ms. Holbrook had failed to show that the reason for her termination was pretexted (Id. at pp. 14-16), (4) that Ms. Holbrook failed to make a *prima facie* showing of her retaliation claim pursuant to Title VII, (5) that Ms. Holbrook failed to make a *prima facie* showing of a hostile work environment

**Case No.** 22-CV-229-FAB-JAR                                              10

pursuant to Title VII, (6) that Ms. Holbrook failed to establish a discrimination claim pursuant to the ADA because she was not terminated because of her disability, and (7) that Ms. Holbrook failed to make a *prima facie* showing that Anchor Glass did not accommodate her disability.  (Id. at p. 25-27.)

Ms. Holbrook objected to Magistrate Judge Robertson's recommendations about her ADA claims, and Anchor Glass responded to the objections.  (Docket No. 43; Docket No. 44.)  The case was reassigned to me on April 9, 2026 pursuant 28 U.S.C. § 292(d). (Docket No. 47.)

## II.   STANDARD OF REVIEW

### A.   Report and Recommendation

After a Report and Recommendation has been issued, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b). The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Id.; see also 28 U.S.C. § 636(b)(1).  Any objection not properly raised, however, is waived for purposes of review by the Court.  Klein v. Harper, 777 F.3d 1144, 1147 (10th Cir. 2015); Silva v. United States, 45 F.4th 1134,

**Case No.** 22-CV-229-FAB-JAR                                              11

1136 n. 2 (10th Cir. 2022). An objection to a report and recommendation is properly raised if it is both timely and specific. United States v. One Parcel of Real Prop. Known as 2121 E. 30th St., 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute." Id. "In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate." Davis v. GEO Grp. Corr., Inc., No. CIV-16-00462-PRW, 2023 WL 2536727, at *1 (W.D. Okla. Mar. 16, 2023) (citing Summers v. State of Utah, 927 F.2d 1165, 1167-68 (10th Cir. 1991)). "Mere regurgitation of original arguments does not trigger the Court's obligation to perform de novo review." United States v. Kirby, No. 23-CR-026-JFH, 2023 WL 3956685, at *2-3 (E.D. Okla. June 12, 2023).

B.   **Summary Judgment**

Federal Rule of Civil Procedure 56 provides that the Court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Walmart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "An

issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Id.

"The movant bears the initial burden to show the absence of a genuine issue of material fact."  Lazy S Ranch Props., LLC v. Valero Terminaling and Distrib. Co., 92 F.4th 1189, 1198 (10th Cir. 2024).  If successful, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250.  The non-movant must show more than a "scintilla of evidence" in support of its position, that is, the evidence must be sufficient for a jury to reasonably find for the non-movant.  Id. at 252.

A court views the facts and their reasonable inferences in the light most favorable to the non-movant.  Id.  While these inferences must be plausible, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-88 (1986), a court should not weigh the evidence, make credibility determinations, or assess the credibility of conflicting testimony at the summary judgment stage.  Forth v. Laramie Cnty. Sch. Dist. No. 1, 85 F.4th 1044, 1052 (10th Cir. 2023).  Only when a specific set of facts is "blatantly contradicted by the record, so that no reasonable jury could believe it" can a court choose to disregard those facts. Norwood v. United Parcel Serv., Inc., 57 F.4th 779, 790 (10th Cir. 2023).

## III. DISCUSSION

Ms. Holbrook objects to the magistrate judge's R&R solely on three grounds: (1) that the magistrate judge improperly invaded the province of the jury by applying the attendance policy against her (Docket No. 43 at pp. 3-4), (2) that the magistrate judge erroneously placed the burden of identifying a suitable vacant position, which could serve as a reasonable accommodation. (Id. at pp. 4-5), and (3) that the magistrate judge ignored evidence that she was terminated because of her disability. (Id. at p. 2.) The Court discusses each argument in turn.

### A.    Failure to Accommodate

Ms. Holbrook alleges that Anchor Glass discriminated against her on the basis of her disability by terminating her, instead of making reasonable accommodations for her disability. To establish a *prima facie* claim for failure to accommodate pursuant to the ADA, Ms. Holbrook must establish: (1) that she is disabled, (2) that she was otherwise qualified for the position, (3) that she requested a reasonable accommodation and (4) that Anchor Glass refused to accommodate her disability. Aubrey v. Koppes, 975 F.3d 995, 1005 (10th Cir. 2020).

If Ms. Holbrook establishes a *prima facie* claim, the burden shifts to her employer to "present evidence either (1) conclusively rebutting one or more elements of plaintiff's

prima facie case or (2) establishing an affirmative defense." Lincoln v. BNSF Ry., 900 F.3d 1166, 1204 (10th Cir. 2018) (internal quotation marks omitted).

### 1.    Is Ms. Holbrook disabled?

Anchor Glass argues that it "had no reason to think Plaintiff was, in fact disabled, or needed accommodation in February 2021." (Docket No. 25 at p. 18.) Anchor Glass points to Dr. Clements' January 13 Form and her February 4 Form indicating that Ms. Holbrook could "return to work without any restrictions." (Docket No. 25 at p. 100; Id. at p. 103.) Ms. Holbrook asserted in her deposition, however, that she could not work and that she is disabled. (Docket No. 37-1 at pp. 89-90.)

Disability for purposes of the ADA includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include "performing manual tasks . . . lifting, bending . . . and working." Id. at § 12102(2)(A). Ms. Holbrook stated that she cannot lift over fifty pounds, which is required in her position. (Docket No. 37-1 at p. 89.) Drawing all inferences to Ms. Holbrook, a jury could find that she is disabled.

### 2.    Is Ms. Holbrook otherwise qualified?

Assuming she is disabled, Anchor Glass argues that Ms. Holbrook is not qualified to hold her job in the Hot End and

that she herself stated that there is no accommodation that would allow her to perform that job. (Docket No. 25 at p. 18; Docket No. 25-1 at p. 2.) Additionally, Anchor Glass states that, based on Dr. Clements' release, it did not believe that Ms. Holbrook needed an accommodation because she was not disabled. (Docket No. 25 at p. 18.) Ms. Holbrook in turn argues that Anchor Glass had a duty to explore reasonable accommodations because she was qualified for the position in the Cold End position she held prior to her disability. (Docket No. 37 at p. 18.)

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "To meet [this second element], [Ms. Holbrook] had to show that there was a reasonable accommodation that would have enabled her to perform the essential functions of her job, at the time she was terminated or soon thereafter." Koppes, 975 F.3d at 1006.

No one disputes that Ms. Holbrook was qualified to do her job before she broke her arm a second time. Ms. Holbrook, however, stated in her deposition that there was no reasonable accommodation available that would allow her to work at the Hot End. (Docket No. 25-1 at p. 92; Docket No. 37-1 at p. 90.) But she would be qualified to work in the Cold End, where she worked

early in her career.  Id.  In the Cold End, bottles that have already been made in the Hot End are examined to make sure they meet specifications and are then boxed and shipped.  (Id. at p. 29.)  It requires less heavy lifting. Id. at pp. 89-90.  Drawing all inferences to Ms. Holbrook, a jury could find she was qualified for the Cold End position, which would have been a reasonable accommodation given that she had previously worked in that position.

**3.  Did Ms. Holbrook request a reasonable accommodation?**

Magistrate Judge Robertson held that even assuming that Ms. Holbrook requested to be reassigned to a Cold End position, she failed to identify a vacant Cold End position to which she could have been reassigned in February 2021.  (Docket No. 42 at pp. 27-28.)  Ms. Holbrook argues that this finding is incorrect because she only needs to identify an available Cold End position if the interactive process had taken place before Anchor Glass terminated her.  (Docket No. 42 at p. 4.)

First, there seems to be a genuine dispute on whether Ms. Holbrook requested a reasonable accommodation to trigger the interactive process between employer and employee to find a reasonable accommodation.  See Kobbes, 975 F.3d at 1007 (stating that plaintiff's requests triggered defendant's duty to

engage in good faith in an interactive process to determine her limitations and consider whether the requested accommodations or any other that may come up would allow plaintiff to return to work).  Anchor Glass argues that Ms. Holbrook did not request a reassignment to a Cold End position, and that it only knew that Ms. Holbrook had been released to work without restriction. (Docket No. 25 at p. 18.)  Meanwhile, Ms. Holbrook states in her deposition that she made the request over the phone to Mr. Dorrell. (Docket No. 25-1 at pp. 91-92; Docket No. 37-1 at p. 90.)  This is a credibility determination that is best determined by a jury.

Assuming that Ms. Holbrook requested that Mr. Dorrell reassign her to a Cold End position as a reasonable accommodation, Anchor Glass was required to participate in the interactive process with Ms. Holbrook to determine a reasonable accommodation.  The ADA recognizes reassignment as a reasonable accommodation of the last resort.  42 U.S.C. § 12111(9)(B); see Smith v. Midland Brake, Inc., a Div. of Echlin, Inc., 180 F.3d 1154, 1171 (10th Cir. 1999).  The magistrate judge determined that Ms. Holbrook failed to show there was a vacant position available and granted summary judgment in favor of Anchor Glass.

Ms. Holbrook argues the magistrate judge made two errors:  (1) that the magistrate judge failed to consider that Anchor Glass refused to participate in the good faith process; and

(2) that she was not required to show that a vacant position existed. (Docket No. 42 at p. 4.) This argument is incorrect. "Despite the importance [of the interactive process, it] is only a means to an end . . . . [a]n employer is not required to engage an employee in a futile interactive process where . . . no reasonable accommodation was possible." Valdez v. McGill, 462 F. App'x 814, 819 (10th Cir. 2012). Therefore, "[t]he employee must, at the time of the summary judgment proceeding, specifically identify and show [vacant positions] were available within the company at or about the time the request for reassignment was made." Midland Brake, Inc., 180 F. 3d at 1179 (emphasis added); Iverson v. City of Shawnee, Kan., 332 F. App'x 501, 503-04 (10th Cir. 2009). Ms. Holbrook failed to do so and does not now claim that such evidence was presented.

Accordingly, the Court **ADOPTS** the magistrate judge's findings and **GRANTS** summary judgment in favor of Anchor Glass on Ms. Holbrook's failure to accommodate claim pursuant to the ADA.

**B.    Discriminatory Discharge pursuant to the ADA**

Ms. Holbrook next claims that Anchor Glass discriminated against her because of her disability when it terminated her employment. A claim for discriminatory discharge differs from a failure to accommodate claim in that Ms. Holbrook must prove that

"[Anchor Glass] acted with a discriminatory animus against her because she had a disability." Kobbes, 975 F.3d at 1014 (citing Lincoln, 900 F.3d at 1204).

Ms. Holbrook next argues that the magistrate judge erred when he found that "the record . . . contains no indication that Ms. Holbrook was terminated by Anchor Glass because she had a disability and Ms. Holbrook herself asserts that she was terminated by Mr. Dorrell 'because of her prior complaints against his friend Hoover.'" (Docket No. 43 at p. 2.) Ms. Holbrook argues that the magistrate judge holds an argument she made as to her Title VII claim against her. Id. "Under both Title VII and the ADA, an employer can have multiple 'but-for' causes behind a decision . . . . These motives are not mutually exclusive." Odell v. Kalitta Air, LLC, 678 F. Supp. 3d 904, 923-24 (E.D. Mich. 2023). Therefore, Ms. Holbrook argues that Magistrate Judge Robertson erred in recommending granting summary judgment on the discrimination claim solely because she cited a motive under Title VII. Because Magistrate Judge Robertson did not discuss the other elements of a discriminatory discharge claim, the Court will do so now.

To establish a *prima facie* case of discriminatory discharge pursuant to 42 U.S.C. § 12112(a), Ms. Holbrook must show that "[s]he is disabled within the meaning of the ADA; . . . that

[s]he is qualified for the job held or desired; and . . . that [s]he was discriminated against because of h[er] disability." Koppes, 975 F.3d at 1014; McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The first two elements of the *prima facie* case for discriminatory discharge are the same as the first two elements for a *prima facie* case for failure to accommodate a disability. See Koppes, 975 F.3d at 1014. Accordingly, we assume that Ms. Holbrook is disabled and that she is a qualified individual.

Magistrate Judge Robertson recommended granting summary judgment because Ms. Holbrook asserted in her deposition that she believed she was fired because she was harassed; therefore, she failed to provide evidence that she was terminated due to her disability. (Docket No. 42 at p. 25.) Anchor Glass focuses on the second and third element of Ms. Holbrook's *prima facie* showing: that Ms. Holbrook failed to establish she was a qualified individual pursuant to the ADA, and that she failed to show that she was terminated because of her disability. (Docket No. 25 at p. 25.)

Pursuant to the above discussion, the Court assumes that Ms. Holbrook is disabled and that she is qualified for the position she held. Ms. Holbrook must also show, however, that Anchor Glass discriminated against her because of her disability. "Discrimination under step three requires plaintiff to suffer an

adverse employment action." Buhrman v. Aureus Med. Grp., 519 F. Supp. 3d 923, 930 (D. Colo. 2021). Adverse employment actions pursuant to the ADA include the discharge of employees. Id. (citing 42 U.S.C. § 12112(a)).

Ms. Holbrook argues that the timing of her termination when she was attempting to return to work from her medical leave gives rise to the inference that she was terminated because of her disability. (Docket No. 42 at pp. 2-3.) "Depending on the specific facts of the case, temporal proximity can contribute to an inference of discrimination." Trujillo v. PacifiCorp, 524 F.3d 1149, 1157 (10th Cir. 2008). Normally temporal proximity is analyzed in the context of retaliation. See e.g., Foster v. Mountain Coal Co., LLC, 830 F.3d 1178, 1191 (10th Cir. 2016); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999); Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir. 1996). In some instances, however, the Tenth Circuit Court of Appeals has also analyzed temporal proximity for claims of straightforward discrimination, not retaliation. See e.g., Webb v. Level 3 Commc'ns, LLC, 167 F. App'x 725, 731 (10th Cir. 2006) (unpublished) (noting that prior alleged instances of discrimination were too remote in time to be evidence of pretext); Trujillo, 524 F.3d at 1157 ("Close temporal proximity

is important in establishing a prima facie case of association discrimination.").

Ms. Holbrook was terminated three days after reaching out to Mr. Dorrell about returning to work. See Docket No. 25-2 at p. 2; Docket No. 25-11. Her termination is temporally close. See Trujillo, 524 F.3d at 1157-58 (six-week period gave rise to inference of discrimination); Anderson, 181 F.3d at 1179 (noting one and a half months was sufficient for inference without other evidence). Considering the evidence in the light most favorable to Ms. Holbrook, there can be an inference of discrimination based on disability.

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to state a "legitimate, nondiscriminatory reason" for the employment action in question. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer establishes a reason, the burden shifts back to the plaintiff to offer evidence to show that the reason is pretextual. Anchor Glass argues that it terminated Ms. Holbrook for violating its attendance policy because she failed to inform it that she had been released for work since January 13, 2021, and intentionally delayed notifying Anchor Glass. (Docket No. 25 at p. 19; Docket No. 44 at p. 4.)

The burden then shifts to Ms. Holbrook to show that Anchor Glass' justification for terminating her was a pretext for disability discrimination. "In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision . . . we do not look to the plaintiff's subjective evaluation of the situation." E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1044 (10th Cir. 2011) (internal quotation marks omitted) (citing Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1166 (10th Cir. 2007); McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1130 (10th Cir. 1998)). To ultimately prevail on her claim, Ms. Holbrook must establish by a "preponderance of the evidence that the legitimate reasons offered by [Anchor Glass] were not its true reasons, but were a pretext for discrimination." Trujillo, 524 F.3d at 1155 (quoting Texas Dept. of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981)). At the summary judgment stage, however, "the trier of fact may consider evidence establishing the prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual." Id. (citations and internal quotation marks omitted).

The Tenth Circuit Court of Appeals has explained how pretext can be shown:

> A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision. This is often accomplished by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence. A plaintiff may also show pretext by demonstrating the defendant acted contrary to a written company policy, an unwritten company policy, or a company practice when making the adverse employment decision affecting the plaintiff.

DePaula v. Easter Seals El Mirador, 859 F.3d 957, 970 (10th Cir. 2017) (internal citations and quotation marks omitted). Pretext can also be shown by evidence that "the defendant has shifted rationales for the adverse employment action" or that "the defendant has treated similarly situated employees who committed acts of comparable seriousness differently." Didier v. Abbott Labs., 614 F. App'x 366, 374 (10th Cir. 2015) (unpublished) (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)). "Mere conjecture[, however,] that the employer's explanation is pretext is insufficient to defeat summary judgment." Anderson, 181 F.3d at 1179 (citing Morgan, 108 F.3d at 1323).

Anchor Glass argues that Ms. Holbrook provides no evidence that the reason is pretextual. It argues that Ms. Holbrook has not provided evidence that the attendance policy has not been applied to other employees. Ms. Holbrook does,

**Case No.** 22-CV-229-FAB-JAR                                                   25

however, argue that the attendance policy was incorrectly applied to her because she did not have any shift scheduled and consequently was not absent.  (Docket No. 43 at p. 3.)  The Court agrees with Ms. Holbrook.  It is unclear from the attendance policy if she had to provide a medical excuse for the two weeks between her communication with Mr. Dorrell and her release to return to work if she did not have a shift scheduled.  See Docket No. 25-5.  For example, the policy states that "Anchor [Glass] must depend on a reliable work force that is consistently on the job when scheduled to work."  Id. at p. 1.  But further on, the policy also states, "[s]hould you be disabled for three (3) days or more due to illness or injury, you are required to present a doctor's release properly dated showing the dates of disability and certifying that you are now able to resume your regular duties."  Id. at p. 2.  How this provision would apply to Ms. Holbrook, who was already on leave and was not scheduled to work, is not entirely clear.  This uncertainty of whether Ms. Holbrook needed to report her absences when she did not have a scheduled shift casts doubt on the policy being the real reason for her termination.  That is, a jury could conclude that the reason Anchor Glass cited for her termination was pretextual, and that the actual reason for her termination was that she could not return to work in the Hot End position due to the permanence of her disability.  Accordingly,

**Case No.** 22-CV-229-FAB-JAR                                                        26

the Court **REJECTS** the magistrate judge's recommendations and **DENIES** defendant Anchor Glass' summary judgment on Ms. Holbrook's disability discrimination claim.

While Ms. Holbrook has waived review of her other claims, the Court has nonetheless conducted a complete review of the record and agrees that summary judgment should be granted for Ms. Holbrook's Title VII claims and FMLA claims for the reasons set forth in the R&R. For the reasons discussed, the Court **GRANTS IN PART** the defendant's motion for summary judgment.

## IV.   CONCLUSION

For all of the above reasons, the Court **ADOPTS IN PART and REJECTS IN PART** the magistrate judge's recommendations contained in Docket No. 42. Accordingly, defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. All of plaintiff's Title VII claims, FMLA claims, and failure to accommodate claim pursuant to ADA are **DISMISSED with prejudice**. Partial judgment shall be entered accordingly. Anchor Glass' motion for summary judgment on Ms. Holbrook's disability discrimination claim pursuant to ADA is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 6, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE